IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARUICE PEARSON,                    :
          Petitioner,              :        1:15-cv-0510
                                  :
    v.                                       :        Hon. John E. Jones III
                                    :
JAMES ECKARD, *et al.*,              :
          Respondents.          :

## MEMORANDUM

### September 12, 2016

Petitioner Maurice Pearson ("Petitioner" or "Pearson") a prisoner currently confined at the State Correctional Institution at Huntingdon, Pennsylvania, files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Judgment of Conviction of December 9, 2009, for two counts of attempted criminal homicide, four counts of aggravated assault and one count of possession of a firearm entered in the Court of Common Pleas of Lebanon County, Criminal No. CP-38-CR-854-2009.  (Doc. 1, p. 1; Doc. 11-31, p. 5).  For the reasons that follow, the petition for writ of habeas corpus will be denied.

## I.    Background

The Superior Court of Pennsylvania summarized the relevant facts as follows:

On March 22, 2009, 16-year-old [D.F] heard sounds of an altercation outside her house located at the intersection of 9th and Church Streets in the City of Lebanon.  When she heard the sounds of things hitting her house and car, [D.F] stepped outside.  She saw two groups of people on opposite sides of the street throwing what appeared to be bricks back and forth at one another.  [D.F] shouted at the groups and urged them to stop.

Russell Lawrence (hereinafter "Lawrence") is [D.F]'s stepfather. When he heard [D.F] yelling at the group outside to stop, Lawrence stepped out on the porch.  At this point, [D.F] saw one of the men raise a gun.  By this time, Lawrence had walked to the front of the porch.  Both Lawrence and [D.F] heard two gun shots.  Lawrence immediately fell back inside his house and yelled for someone to call the police.  Lawrence had been shot and was bleeding profusely.

At the time of the melee along 9th Street, Greg Drahosky (hereinafter "Drahosky") was driving home from a parish meeting at his church. As Drahosky approached the intersection of 9th Street and Church Street, he observed 20 to 25 young people throwing things at one another.  He saw one of the men pull out a gun and start shooting north on 9th Street.  Drahosky indicated that two or three shots were fired by this gentleman.  Drahosky saw no other individuals with guns.  He saw no one wrestling the shooter for possession of the gun.

Drahosky observed the shooter run south on 9th Street and get into a copper color Chevy Cobalt vehicle.  Drahosky then followed the Cobalt vehicle on Church Street to 8th Street and then to a parking lot between 8th and 9th Streets.  Drahosky described the shooter as being dark skinned, young and with a close cut haircut.

Once Drahosky was sure that the Cobalt vehicle would remain parked, he left the scene in search of police.  He found Officer Eric Itzen. Drahosky told Officer Itzen that he observed the shooting and he knew where the shooter's car was located.  He took Officer Itzen to that location, which was a parking lot adjacent to an apartment at 134 North 9th Street.

Lawrence was transported to Lebanon Good Samaritan Hospital where he would remain for a week. Dr. Kimberly Harbough treated Lawrence and stated that a bullet had entered his chest causing arterial damage and a severing of the brachial plexus nerve bundle. The brachial plexus is the bundle of nerves that allows a human being to use his/her arm. Ultimately, it would be determined that Lawrence would lose use of his right arm as a result of this bullet wound.

As Lawrence was receiving treatment, police began to investigate this incident. An analysis of the scene revealed three bullet casings that had been recovered. No gun was located. In addition, police learned that a young [man] by the name of Juan Garcia was also shot during the melee. Officer Andrew Harner was dispatched to interview Mr. Garcia. He refused to cooperate and provide information.

\*\*\*

Police learned that the altercation at 9th and Church Streets was gang related. Members of the "Blood" gang and the "Crip" gang were involved in the fight. Unfortunately, the level of cooperation provided by the individuals involved in the fights was minimal.

Police determined that the owner of the copper colored Cobalt was Damaris Rodriguez. Ms. Rodriguez stated that she let her boyfriend "Jessie" take the car and that it was not in her possession on March 22, 2009. Rodriguez also stated that she had reported her car as stolen. Police were able to locate the allegedly stolen Cobalt vehicle. Inside, they found numerous items belonging to [Appellant], including documents and a cell phone.

Police started to search for [Appellant] in order to question him. It was determined that [Appellant] was in Easton. On March 27, 2009, he was approached by Detective Shawn Maloney of the Easton Police Department. At that time, [Appellant] lied about his identity and claimed his name was "James Johnson." Trooper James Albert of the Pennsylvania State Police also testified that he assisted in the search for [Appellant] in Easton. Trooper Albert stated that he had a

"difficult time" locating [Appellant], [Appellant] denied he was Maurice Pearson.

Eventually, Detective Keith Ulrich of the Lebanon City Police Department was able to interview [Appellant] in Easton. [Appellant] acknowledged that he was involved in a gang fight. He stated that he saw one of [Lamar "Blue" White's boy's] pull a gun. According to [Appellant], he and the unknown [associate of] "Blue" wrestled over the gun and it went off accidentally. Thereafter, [Appellant] stated that he threw the gun on the ground. Contrary to [Appellant's] statement, neither Drahosky, Lawrence nor [D.F] recalled seeing anyone else in the vicinity of the shooter when the gunshots in question were fired. Both Lawrence and Drahosky specifically denied seeing anyone involved in "wrestling" with a gun.

*Commonwealth v. Pearson*, 32 A.3d 839 (Pa. Super. 2011) (unpublished memorandum at 1-4), *appeal denied*, 38 A.3d 824 (Pa. 2012), quoting Trial Court Opinion, 5/6/10, at 5-9.

(Doc. 11-31, pp. 1-4).

The relevant procedural history is as follows:

On May 20, 2009, the Commonwealth filed an information charging Appellant with three counts of attempted criminal homicide, six counts of aggravated assault, one count of possession of a firearm, three counts of criminal homicide, and three counts of recklessly endangering another person (REAP). On December 8, 2009, Appellant proceeded to a two-day jury trial. On December 9, 2009, at the conclusion of said trial, the jury found Appellant guilty of two counts of attempted criminal homicide, four counts of aggravated assault and one count of possession of a firearm. On February 17, 2010, the trial count imposed an aggregate sentence of 70 years' imprisonment. On February 23, 2010, Appellant filed a timely motion for modification of sentence which the trial court denied on February 25, 2010. On March 25, 2010, Appellant filed a timely notice of appeal to this Court. This Court affirmed Appellant's judgment of sentence on August 19, 2011. *Commonwealth v. Pearson*, 32 A.3d

839 (Pa. Super. 2011) (unpublished memorandum at 1-4), *appeal denied*, 38 A.3d 824 (Pa. 2012).   Our Supreme Court denied Appellant's petition for allowance of appeal on January 25, 2012.

(Doc. 11-31, pp. 4-5) (Footnotes omitted).

Thereafter, Pearson timely filed a petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 PA.C.S.A. §§ 9541-9546.  (Doc. 11-31, p. 5). The PCRA court held an evidentiary hearing on August 27, 2013.  (*Id.*)  The court denied the petition on November 7, 2013.  (*Id.*)  The Superior Court affirmed the PCRA court's November 7, 2013 order.  (*Id.* at 22).  Pearson's petition for allowance of appeal was denied on November 18, 2014.  (Doc. 11-33)

## II.   Issues Presented in Federal Petition

Pearson filed his federal petition on March 13, 2015.  (Doc. 1).  Therein, he solely contends that he is entitled to habeas relief because "[t]he trial court erred in permitting the Commonwealth to amend criminal information prior to trial and then during trial."  (Doc. 1, p. 5).   He sets forth the following supporting facts:

> The Commonwealth, over the objections of counsel, was permitted to amend the information not once, but twice.   The first amendment changed all of the counts except one, Count 1[.]  Criminal Attempt at Criminal Homicide, is altered in that the amendment deleted the words "or did act as an accomplice" and went from ["]the defendant did discharge a firearm in the direction of Russell Lawrence causing serious bodily injury[.]"   [H]e was not prepared to defend against these altered charges.  The defendant was not given adequate notice of the altered charges.  Thus, the defendant was prejudice [sic] by the

5

changes as he was not given extra time to adequately defend himself against the charges.

Moreover, the Commonwealth should not have been allowed to amend the information a second time during the trial. The Commonwealth again changed the wording on Counts 4, 5, 6, 7, 8 and 9. The wording that was changed on the second amended information was wording regarding whether the defendant attempted to cause or did cause bodily injury or serious bodily injury. Such a change is substantial and is especially substantial when changed midway through trial. Therefore, such changes prejudice [sic] the defendant as he was again not given extra time to adequately defend himself against altered charges.

(Doc. 1, pp. 5, 15).

## III.   **Discussion**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner to challenge the "fact or duration" of his confinement.

*Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Petitioner's case is governed

by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132,

110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in

pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

...

6

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). For instance, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims asserting errors of state law, a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review, even if they are couched in terms of due process. *Estelle v. McGuire*, 502 U.S. 62, 67-8, (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 211 (1982); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir.1997) (stating that "it is well established that a state

court's misapplication of its own law does not generally raise a constitutional claim").

Review of the record reveals that the sole claim contained in the petition, that "[t]he trial court erred in permitting the Commonwealth to amend criminal information prior to trial and then during trial," does not raise a constitutional question cognizable on federal habeas review.  (Doc. 1, p. 5).  On direct appeal to the Superior Court of Pennsylvania Pearson challenged the trial court's order permitting amendment of the information prior to, and during trial arguing that "[t]his Court erred in permitting, over objection, the Commonwealth to amend the Criminal Information immediately prior to trial, and then erred by permitting a second Amended Information during trial, over objection, where said amendments alleged a materially different set of facts, where the elements, and defenses to the amended crimes were materially different from the elements, and defenses, to the crimes originally charged, and where Appellant was prejudiced by the amendments.  (Doc. 11-18, ¶ 5; Doc. 11-21, p. 15).  Pearson's direct appeal brief wholly relies on the Pennsylvania Rules of Criminal Procedure, Rule 564, and cites only to state law.  He argues that changes to each information "are not simply clerical errors that are being changed, but rather they are material changes that alter the elements of the crimes charged."  (Doc. 11-20, p. 23).

In considering the issue, the Superior Court set forth the pertinent rule and applicable law as follows:

> Appellant [ ] asserts that the trial court erred by permitting the Commonwealth to amend the criminal information against him immediately prior to, and during trial.  Pa.R.Crim.P. 654 provides in relevant part:
>
> ### Rule 564. Amendment of Information
>
> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided that the information as amended does not charge an additional or different offense.
>
> Pa.R.Crim.P. 564.  The purpose of the rule "is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Brickman*, 892 A.2d 1008, 1019 (Pa. Super. 2005) (*quoting Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001).  The test to be employed on a motion to amend the information is as follows:
>
> > [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the indictment or information.  If so, then the defendant is deemed to have been placed on notice regarding the alleged criminal conduct.  If, however, the amended provision alleges a different set of events, or the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.
>
> *Brickman*, 882 A.2d at 1019 (citation omitted).

(Doc. 11-21, pp. 14-15).

After comparing the language of each of the counts contained in the amendments (*Id.* at 15-20), the Superior Court stated "[o]ur review of the pretrial amendment indicates that the Commonwealth did not change any of the offenses charged or add any new charges.  Furthermore, in Appellant's petition for writ of certiorari, which he filed *pro se* in the trial court on August 18, 2009, Appellant recognized that the Commonwealth was alleging that Lamar White was one of his intended targets.  In an interview with police he stated that he fired the gun while wrestling for it with another individual.  Accordingly, he was aware of the facts upon which the Commonwealth based its case.  Although Appellant asserts that he was prejudiced by the amendment, he does not explain how he was prejudiced." (*Id.* at 20).

In addressing aggravated assault Counts 4-9, the Superior Court noted that the information and amended information were phrased as " 'did attempt to cause, or intentionally, or knowingly did cause' serious bodily injury or bodily injury." The second amended information, however, "eliminated attempt from Counts 4, 7, and 8, and accordingly those counts charged Appellant with actually causing serious bodily harm (Count 4) and bodily injury (Counts 7 & 8) only.  The second amended information eliminated the charges of actually causing harm from Counts 5, 6, and 9, and limited the charges to attempt to cause serious bodily injury

(Counts 5 & 6) and attempt to cause bodily injury (Count 9) only.  Accordingly, the second amended information clarifies the aggravated assault accounts set forth in the information and amended information.  Because the amendments clarified the aggravated assault counts, they did not add offenses to the information or in any way prejudice Appellant.  Therefore, the trial court did not err in permitting the Commonwealth to amend the information."  (*Id.* at 20-21).

The state court proceedings are wholly based on state court criminal rules and state law and are devoid of any references to federal constitutional law.  In *Edwards v. Rozum*, 337 F. App'x 236 (3d Cir. 2009), Edwards challenged the amendment of a criminal information which, at the time, was governed by Pennsylvania Rule of Criminal Procedure, Rule 229.[1]  "When Edwards challenged the decision of the trial court on direct appeal he only challenged the trial court's order permitting addition of the conspiracy charge in the information under the Pennsylvania Rules of Criminal Procedure.  This was a state law claim, in support of which Edwards cited only state cases."  *Edwards*, 337 F. App'x at 239. Further, the inclusion in his petition to the Supreme Court of Pennsylvania, that "the trial court's ruling that it was 'probably not in accord with … decisions of the Supreme Court of Pennsylvania or the Supreme Court of the United States,'" was

---

[1] The rule has since been amended and is now found at PA.R.CRIM.P. 564.  *Edwards*, 337 F. App'x at 237.

found to be insufficient to raise a federal claim.  (*Id.*)  Pearson does not make even

a passing reference to federal law or raise a federal constitutional claim in any of

the state court proceedings or in his federal petition.[2]  Thus, the petition will be

denied as the claim raised therein is not cognizable on federal habeas review.

---

[2] Notably, a liberal construction of the petition as containing a federal due process claim results in the conclusion that the claim is substantively without merit.  *See Rainey v. Varner*, 603 F.3d 189, 196 (3d Cir. 2010); *see also Smith v. Vaughn*, No. 96-8482, 1997 WL 338851, at *6 (E.D.Pa. June 17, 1997).  "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super. 2006).  When presented with a question concerning the propriety of an amendment, the court considers: "[w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the  amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted." *Sinclair*, 897 A.2d at 1221

With regards to federal standards as to whether a defendant has received fair notice of the charges against him in accordance with due process of the law, a court must begin with an analysis of the content of information presented against the accused.  *See Cole v. United States*, 333 U.S. 196, 198 (1948).  "[A]n information [must] state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against." *Russell v. United States*, 369 U.S. 749, 763–64 (1962); *see also Hamling v. United States*, 418 U.S. 87, 117, (1974) (concluding that a charge or Bill of Information satisfies due process when it contains the elements of the crime, permits the accused to plead and prepare an adequate defense, and allows the disposition to be used as a bar in a subsequent prosecution).  An explicit citation to the precise statute at issue is best, but a "brief factual recitation in the information" can also suffice. *See Cole*, 333 U.S. at 198.  The state court standards are in compliance with clearly established Federal law, as determined by the Supreme Court of the United States.

Moreover, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  After a thorough review of the language contained in the original information and the each amended information, the Superior Court determined that the amendments clarified the aggravated assault counts and did not add offenses to the information or in any way prejudice Pearson.  Additionally, each amended information involved the exact same general factual situation as had been specified

## IV.   <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

## V.   <u>Conclusion</u>

Based on the foregoing, the Court will deny Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a certificate of appealability will not issue.

An appropriate Order follows.

---

originally. Therefore, the amendment was one of form not substance, and did not prejudice Pearson, who was always on adequate notice of the charges levied against him.